EDWARD ROSEWATER v. FRIEDRIEKA PINZENSCHAM.

FILED JANUARY 16, 1894.   No. 6103.

1. Notice of an application for a license to sell intoxicating liquors must be published at least two weeks in a newspaper published in the county having the largest circulation therein, before any action can be taken on the application. When the notice is inserted in a daily paper, it must be published daily for the statutory period.

2. The affidavit of the publisher of a newspaper, accompanying and annexed to such a notice, stating, after giving the name of the paper, "that said newspaper has the largest circulation in Douglas county, and that the printed notice hereto attached was, to his personal knowledge, published daily in the said daily newspaper from the 15th day of December, 1892, to the 28th day of December, 1892," is *prima facie* evidence of the publica-

tion of the notice, and that the same was inserted in the proper newspaper. The affidavit may be impeached by competent evidence.

3. A license board has no authority to designate the newspaper in which the publication of such notices shall be made.

4. The statute relating to the publication of notices of applications for liquor licenses contemplates that the newspaper in which such notices are to be published must be one having *bona fide* subscribers. The circulation of the paper is not to be determined alone from the number of subscribers in the county, but from such subscription list and the *bona fide* average sales of the publication combined.

5. Whether or not several editions of a daily paper are separate and distinct publications is a question of fact to be determined, from the evidence, by the license board.

6. Notice of application for liquor license. Where the matter published in each of several editions of a daily paper is not substantially the same, and each edition has a different heading or name, and is sent to a different set of subscribers, liquor notices should be inserted in but one edition thereof, and the circulation of which alone will determine whether the notice was inserted in the proper paper.

7. Powers of License Board. A license board, on the hearing of a remonstrance against granting a liquor license, has power to compel the attendance of witnesses, the production of books and papers, and to commit for contempt a witness if he persists in refusing to answer questions, or if he willfully refuses to produce books and papers before the board.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

The opinion contains a statement of the case.

*Edward W. Simeral,* for plaintiff in error:

The law regards each daily edition as a separate newspaper. (*State v. City of South Omaha,* 33 Neb., 876; *Russell v. St. Paul, M. & M. R. Co.,* 31 N. W. Rep. [Minn.], 692; *Scammon v. City of Chicago,* 40 Ill., 146; *Hull v. Chicago, B. & Q. R. Co.,* 21 Neb., 371.)

*Hall & McCulloch, contra,* cited: *Fairchild v. City of St. Paul,* 49 N. W. Rep. [Minn.], 325; *Lambert v. Stephen,* 29 Neb., 283.

NORVAL, C. J.

This is a proceeding in error to reverse the judgment of the district court of Douglas county affirming an order of the board of fire and police commissioners of the city of Omaha granting a saloon license to defendant in error. In December, 1892, Friedrieka Pinzenscham filed with the secretary of the board of fire and police commissioners of the city of Omaha a petition, signed by the requisite number of qualified petitioners, praying a license to sell intoxicating liquors in said city during the year 1893. Notice of the application in due form was published in all of the daily editions of the Omaha *Daily World-Herald,* from the 15th day of December, 1892, to the 28th day of the same month. Edward Rosewater filed with said board a remonstrance against the issuing of a licence to defendant in error, on two grounds: First, that the notice of said application was not published in the newspaper having the largest circulation in Douglas county; second, that at the time said notice was published in the *World-Herald* the applicant knew said paper did not have the largest circulation in said county. On the 12th day of January, 1893, a hearing was had upon the remonstrance, before the board of fire and police commissioners, and upon consideration of the testimony adduced it was ordered by said board that the remonstrance be overruled, that the applicant's bond be approved, and that a license be granted. The remonstrator prosecuted error to the district court, where the decision of the board was sustained.

Section 2174 of the Consolidated Statutes (sec. 2, ch. 50, Comp. Stats.), relating to notice of applications for liquor licenses, provides that "no action shall be taken upon said

application until at least two weeks' notice of the filing of the same has been given by publication in a newspaper published in said county, having the largest circulation therein, or if no newspaper is published in said county, by posting written or printed notices of said application in five of the most public places in the town, precinct, village, or city in which the business is to be conducted," etc. The foregoing provision is mandatory and imperative. Unless the statutory notice has been given, the license board has no jurisdiction or power to issue a license. Manifestly it was the intention of the legislature that the notice should be published in the newspaper, in case one is published in the county where the liquors are to be sold, having the largest *bona fide* circulation therein. (*Lambert v. Stevens*, 29 Neb., 283.) In the case cited it was held, in effect, that, even though the notice is published in a newspaper not having the largest circulation, the publication is sufficient, provided the applicant acted in good faith in the making of the choice of the paper; and upon a re-examination of the question, we are satisfied that the rule announced in the decision alluded to is correct, and should be followed.

In *State v. South Omaha*, 33 Neb., 876, it was decided that a notice of an application for a license to sell intoxicating liquors must be published for two weeks, in each issue of the paper. Where the paper containing the notice is a daily, the notice must be published daily; but in case the paper having the largest circulation in the county is published weekly, the notice must be published therein in every issue of such paper for two weeks. In the case at bar, no question is made as to the form of the notice, nor is it claimed that the notice was not inserted for the requisite length of time, but it is insisted by the remonstrator that the newspaper selected was not a proper one, for the reason that the *World-Herald* does not have as large a circulation in Douglas county as the Omaha *Bee*. This is the main

ground, and the only one which we deem necessary to notice, upon which a reversal is asked. It might be observed that the notice given by the defendant in error of her application for a license, with proof of publication thereof, was filed with the license bond before any action was taken upon this application. A copy of this notice is contained in the record before us. Accompanying and annexed to the notice is the affidavit of Guy N. Stephens, the advertising clerk of the Omaha *Daily World-Herald*, which states "that said newspaper has the largest circulation in Douglas county, and that the printed notice hereto attached was, to his personal knowledge, published daily in the said daily newspapers from the 15th day of December, 1892, to the 28th day of December, 1892." This affidavit is *prima facie* evidence, not only of the publication of the notice, but that the same was inserted in the newspaper having the largest circulation in Douglas county. The affidavit, however, is not conclusive, but may be impeached by competent proof. (Code, sec. 370.)

Does the evidence in the case disclose that the notice in question was not published in compliance with the provisions of the statute above quoted, relating to such notices? Upon the hearing before the board of fire and police commissioners there were introduced in evidence, over the objection of the applicant, the record of a resolution adopted by said board on the 30th day of October, 1892, requesting the publishers of the several newspapers in Douglas county to furnish the board with a sworn statement of the number of subscribers each had in the county, to the various editions, during the period beginning August 1, 1892, and ending October 31, 1892; also the record of the following proceedings of the board at their meeting held on November 14, 1892:

"The secretary presented affidavits of circulation from the Omaha *World-Herald* and from the Omaha *Bee* as follows, to-wit: From William H. Dox, city circulator of the

*World-Herald,* dated November 7, 1892, showing the average daily circulation during the period beginning August 1, 1892 and ending October 1, 1892, to be 10,112 copies. From N. P. Feil, of the Omaha *Bee,* dated November 7, 1892, showing the average daily circulation of the *Bee* for three months ending October 31, 1892, to be, *Morning Bee,* 2,374 copies, and *Evening Bee,* 8,144 copies (total 10,518). From G. M. Hitchcock, of the *World-Herald,* dated November 14, 1892, showing the circulation of the *World-Herald* for the month of October, 1892, as being 10,694. From N. P. Feil, of the *Bee,* dated November 14, 1892, showing the average daily circulation of the *Evening Bee* during October as 8,214 copies, and the *Morning Bee,* 2,522 copies (10,736).

" Thereupon, upon motion, the following resolution was adopted, to-wit:

"*Resolved,* That the board finds from the affidavits filed by the *World-Herald* and from the affidavits filed by the *Bee,* that the *Bee* is the newspaper having the largest circulation in the county of Douglas, the two papers above mentioned being the only two newspapers which have filed any evidence of circulation."

The foregoing action of the board was had prior to the time Pinzenscham filed her petition for a license. We are unable to find any provision of statute, and our attention has not been called to any such by counsel, which makes it the duty of a license board to take testimony and determine in advance of the filing of an application for a license, which paper published in the county has the largest circulation therein. The action of the board, therefore, was not binding upon the applicant, nor was the same admissible for the purpose of showing which paper, the Omaha *Bee* or the *World-Herald,* had the larger circulation. We do not understand that counsel for plaintiff in error claims that the foregoing record of the proceedings of the board was competent evidence on the question of circulation, or that the

same was admitted for that purpose; but rather, since a copy of the record was served upon defendant in error, it was admissible as bearing upon the question whether or not she acted in good faith in the selection of the paper in which the notice was published. In our view, the validity of the notice in this case does not depend upon the good faith, or want thereof, of the defendant in error in the designation of the paper. Therefore, said record of the proceedings of the board of fire and police commissioners will not be further considered.

The determination of the question of fact, namely, which of the two papers had the larger circulation, involves the consideration of the evidence. Upon the hearing of the remonstrance, testimony was introduced for the purpose of establishing that the notice was not published in the newspaper contemplated by the statute.

W. H. Dox, being called as a witness for the remonstrator, testified that he was an employe of the publisher of the *World-Herald;* that the average daily circulation of the *World-Herald* in Douglas county, for the months of August and September, 1892, was 10,112; that during the month of October of that year it was between ten and eleven thousand; that during a portion of the months named there were three editions of the paper, viz., morning, noon, and evening, and for the remainder of the time there were but two; that the figures given by the witness covered all the editions, including the paper issued on Sunday.

G. M. Hitchcock, business manager of the *World-Herald*, testified that generally four editions of his paper are published daily, namely, *"Early Mail"* edition, so called for the Burlington flyer, *Morning World-Herald, Noon World-Herald,* and *Evening World-Herald;* that subscribers of the morning and evening editions are rarely the same, probably twenty-five duplicates; that the noon edition is not sent to subscribers, but is sold by news-boys. Witness

declined to state the number of subscribers for the different editions separately, or the number sold by news-dealers, but insisted on treating all the editions as one newspaper. Witness was asked to produce the book containing a list of subscribers, but he failed to comply with the request.

N. P. Feil, business manager of the Omaha *Bee*, testified that during the months of August, September, October, November, and December, 1892, there were three editions daily, except Sunday, known as *Morning World-Herald*, *Noon World-Herald*, and *Evening World-Herald*; that the average daily circulation of the Omaha *Evening Bee*, for August, September, and October, 1892, six days in the week, excepting Sunday, on which no evening edition is published, was 8,144, which is exclusive of returned papers from news-stands, or railroad papers delivered in Omaha; that the average circulation of the *Evening Bee* for December of the same year was 8,151, and for November, 8,308. Witness further stated that in giving these figures he relied upon a memorandum made from the books of the *Bee*, and that he could not remember the circulation without refreshing his recollection from the books or a memorandum. The board also ruled that witness should not state the circulation of the *Morning Bee*.

F. M. Youngs, foreman of the press-room of the Omaha *Bee*, testified that the number of *Evening Bees* printed daily during December, 1892, was between ten and eleven thousand, of which number about seventy-six or seventy-eight hundred were delivered daily to Mr. Williams, the lessee of the city circulation of the paper; that from 250 to 350 *Evening Bees* are delivered by witness daily to the news-boys; that the usual speed of a Potter press is 9,000 per hour; that the publishers of the *World-Herald* have a Potter press, and also a Hoe press.

William Nichol, helper in the press-room of the *Bee*, testified that he was familiar with the speed newspapers are printed on a Potter or web perfecting press, the same

being the kind used in the printing of the *Evening World-Herald;* that such a press will ordinarily print 150 papers per minute; that on December 22d, 23d, 24th, and 31st, 1892, and on January 2, 1893, witness timed the running of the press on these dates, during the period the *Evening World-Herald* was being printed, and that the length of time consumed was from forty-seven to fifty minutes, exclusive of stops.

James Ryan testified that it requires about an hour to print the evening edition of the *World-Herald.*

Edward Rosewater, president of the Bee Publishing Company, testified that he had examined the books and found that the circulation of the *Bee* was larger in November than in October; that the circulation of the *Evening Bee* was greater by one hundred in December than it was in October. Witness declined to give the circulation of the *Morning Bee,* but stated that "whenever Mr. Hitchcock will come and tell how many papers they print in the morning, I will tell ours."

There is considerable more testimony in the record, but the foregoing is believed to be a fair synopsis of that portion relating to the circulation of the two papers. It will be noticed that the evidence in the case is not of the most conclusive or satisfactory character. Instead of the books, which show the circulation of the *Bee* and *World-Herald* respectively, being produced on the trial and introduced in evidence, witnesses were permitted to state what it is claimed appears on the face of the books. On the one side the witnesses refused to divulge the circulation of each edition of the *World-Herald,* while those for the remonstrator declined to give the circulation of the *Morning Bee.* The books themselves were the best evidence of their contents, yet they were not required to be produced, nor was any attempt made to compel the witnesses on either side to answer many pertinent and proper questions put to them. Doubtless, this arose from the belief that the license board

had no authority either to enforce the production of the books, or to punish witnesses as for contempt for their refusal to testify. This court is, however, unanimously of the opinion that the board possessed such power. The proposition is too plain to require discussion or the citation of authorities in support thereof.

It appears from the proofs in the case that defendant in error's notice was inserted in all of the editions of the *World-Herald,* and that the aggregate daily circulation in Douglas county of all of said editions at the time was between 10,000 and 11,000. The *Evening Bee* likewise had at the time of the publication a circulation in the county of 8,150. The contention of the remonstrator is, and we are asked to so decide, that each edition of the *World-Herald* is a separate and distinct newspaper. A newspaper, in the usual popular acceptation of the word, is a publication issued at regular stated intervals, containing, among other things, the current news, or the news of the day. (16 Am. & Eng. Ency. of Law, 490.) In contemplation of the statute relating to the publication of notices of applications for liquor licenses, the newspaper in which such notices are to be published must not only be one having *bona fide* subscribers, but the publication must have the largest circulation in the county. By this we do not mean that the circulation is to be determined alone by the number of subscribers residing in the county, but from the subscription list and average *bona fide* sales of the paper in the county, combined. A paper which is not distributed to subscribers, but is merely sold to news-boys and newsdealers for distribution, is not such a publication as the law requires notices like the one in question shall be inserted in. (*Scammon v. City of Chicago,* 40 Ill., 146.)

Counsel for plaintiff in error cites the case of *Hull v. Chicago, B. & Q. R. Co.,* 21 Neb., 371, as sustaining his contention that the several daily editions of the *World-Herald* do not constitute one newspaper. In that case, no-

tice of proceedings to condemn real estate taken for right of way of a railroad was published in the *Daily State Journal* a portion of the time, and the remainder of the time in the *Weekly State Journal.* It was held that the publication was invalid, for the reason that it was made in two distinct newspapers, instead of one; in other words, that the *Weekly State Journal* was a separate and distinct paper from the *Daily State Journal.* There the evidence conclusively established, and the trial court so found, that although such papers were published at the same office, by the same proprietors, they were sent to different subscribers in different localities, and were in fact separate and different papers. There is nothing in the record before us from which we can say as a matter of fact that each daily edition of the *World-Herald* is a separate and distinct publication.

It is said in the brief of remonstrator "that the *Morning World-Herald* and *Evening World-Herald* contain different articles and news items." This may be true as a matter of fact, but there is absolutely no proof in the record to show whether the matter contained in the various editions is the same or unlike. If there is such evidence, we have failed to discover it. True, each edition was issued by the same publisher and each was sent to a different set of subscribers, from which we might conjecture, perhaps, that the several editions did not constitute one newspaper; yet these facts alone are not sufficient to justify us in so holding. Whether or not the several editions of a daily paper are separate and distinct publications is a question of fact to be determined from the proof, in the first instance, by the license board. If the matter published in each edition of a daily paper is not substantially the same, and each edition has a different heading or name, and is sent to different subscribers, it would be quite clear that the combined circulation of all cannot be counted, for the purpose of ascertaining the newspaper in which notices like the one in question should be published.

Counsel for defendant in error calls attention to the case of *State v. South Omaha, supra,* and to the following language used by the author of that opinion, viz. : " This notice is to have as wide publicity as possible." Again, "The object of the publication is to give the widest possible publicity to the application, in order that those who consider the applicant an unfit person to conduct a saloon, may have an opportunity to remonstrate against the issuing of license." The foregoing must be construed with reference to the case that was there before the court. The question there involved was whether a notice of application for a license to sell liquors, which is published in a daily paper, must be published therein continuously each day for two weeks. The question now under consideration was not before the court. To give the language above quoted the meaning contended for by defendant in error would not only require that the publication be made in each edition of a newspaper, daily, weekly, and tri-weekly, as well as in all the newspapers published in the county. Such was not within the contemplation of the statute. All that the law requires is that the notice shall be published in the newspaper having the largest circulation in the county. If several editions of a daily paper in fact constitute but one paper, then the notice must be published in each of said editions. If each edition is a separate and distinct publication, a publication in one, if the same has the largest circulation in the county, will be sufficient. But if we regard each edition of the daily *World-Herald* as a distinct publication, still the judgment below is right, since the evidence fails to disclose that any one of such editions, in which the notice was published, had a smaller circulation than the *Evening Bee.* The latter publication may have a larger circulation in Douglas county than any single edition of the *World-Herald,* but if so, the evidence does not show it, owing to the fact that the record shows the aggregate circulation of the several editions of the paper merely, and not the circulation of

each edition separately.   For the reasons stated the judgment will be

AFFIRMED.