N. P. FEIL v. KITCHEN BROTHERS HOTEL COMPANY.

FILED DECEMBER 8, 1898. No. 9856.

1. **Intoxicating Liquors: LICENSE: INTEREST OF REMONSTRATOR.** One is a competent remonstrator against the granting of a liquor license on the ground that notice of the application for such license was not published in the newspaper having the largest circulation in the county, notwithstanding he is personally interested in the determination of the question.

2. ———: ———: NOTICE OF APPLICATION. Notice of an application for liquor license is required to be given for two weeks prior to the hearing in a newspaper published in the county having the largest circulation therein, unless no newspaper is published in such county. Where a notice is inserted in a daily paper, it must be published daily for the period stated,

Feil v. Kitchen Bros. Hotel Co.

3. ——: ——: ——: NEWSPAPERS. Whether several editions of a daily paper are separate and distinct publications is a question of fact, to be determined, in the first instance, by the license board.

4. ——: ——: ——: ——. Where the matter published in each of two editions of a daily paper is not substantially the same, and each edition has a different heading or name, and is sent to a different list of subscribers, notice of an application for liquor license is required to be inserted in but one edition thereof daily for the requisite length of time, and its circulation alone is to be considered in determining whether the proper newspaper was selected. *Rosewater v. Pinzenscham*, 38 Neb. 835, followed.

5. ——: ——: ——: ——. Though the notice should be inserted in the newspaper having the largest circulation, the publication will not be declared invalid if bad faith cannot be properly imputed to the applicant in making choice of the newspaper.

6. ——: ——: ——: ——. License board has no authority, by resolution or otherwise, to designate the newspaper in which the publication of notices of applications for license shall be made.

7. **Findings:** EVIDENCE: REVIEW. Findings of the trial court, when sustained by sufficient evidence, will not be disturbed on review.

ERROR from the district court of Douglas county. Tried below before FAWCETT, DICKINSON, and BAKER, JJ. *Affirmed.*

*Edward W. Simeral*, for plaintiff in error.

*Hall & McCulloch, contra.*

NORVAL, J.

Kitchen Brothers Hotel Company presented an application to the board of fire and police commissioners of the city of Omaha for license to sell intoxicating liquors in said city. Notice of the filing of the application was published in the Omaha *Daily World-Herald*, and before the hearing N. P. Feil filed with said board a protest or remonstrance against the issuance of the license upon the following grounds:

"1. Notice of the application was not published in the

newspaper published in Douglas county, having the largest *bona fide* circulation therein.

"2. There is no legal newspaper printed or published in said county known as the Omaha *Daily World-Herald*, as set forth in the affidavit of publication attached to the notice.

"3. Neither the *Morning World-Herald* nor the *Evening World-Herald* has as large a *bona fide* circulation in Douglas county as the Omaha *Evening Bee*.

"4. That the applicant did not publish the notice in good faith, believing that the same was inserted in the newspaper having the largest circulation in the county."

At the hearing before the board the remonstrance was overruled, and a license was ordered issued as prayed. The remonstrator prosecuted an appeal from the decision to the district court, where the matter was heard before Judges Baker, Dickinson, and Fawcett, who made special findings of fact, among others the following:

"First. The contents of the *Morning World-Herald* and *Evening World-Herald* of the same date are not substantially the same, and they do not constitute one newspaper.

"Second. That the Omaha *Evening Bee* was a newspaper published in Douglas county of the greater circulation therein, and that the notice for the license was not inserted in the newspaper having the largest circulation in the county.

"Third. That applicant acted in good faith in making its choice of a newspaper in which to publish its said notice."

Upon the strength of this last finding the court affirmed the order and decision of the license board, Judge Dickinson dissenting from the first finding, all the judges concurring in the second, and Judge Fawcett dissenting from the last finding as well as the judgment of affirmance based thereon.

It is argued in the brief of counsel for applicant that the remonstrator has no standing in court to object to

the issuance of the liquor license, and that the judgment should be affirmed, because the remonstrance is by N. P. Feil, manager of the Bee Publishing Company, and was not filed for the public good, but as a mere business proposition. The protest or remonstrance on its face shows that it was made by Mr. Feil as an individual, and not in any representative capacity whatever. It is a fact it was developed on the trial that remonstrator was the business manager of the corporation which publishes the Omaha *Evening Bee* and other newspapers, and that a favorable decision might inure to the benefit of the corporation of which he was the representative. But these considerations did not make Mr. Feil an incompetent remonstrator, or preclude him from demanding that applicant should comply with the plain requirements of law by publishing the notice of its application for a license in the newspaper published and having the largest circulation in Douglas county. The statute does not specify that disinterested persons alone shall be competent remonstrators against the granting of license to sell intoxicating liquors, and this court has neither the inclination nor the power to interpolate into the statute a provision neither in express terms nor impliedly adopted by the lawmaking body. As we view the statute, any person, though interested, may protest against the granting of a liquor license, if sufficient cause or ground therefor exists. Whatever may have been the motive which induced or prompted Mr. Feil to take the step he did, there can be no doubt that he was not disqualified from doing so.

The proof of the publication attached to the copy of the notice of the application states substantially that such notice was published the requisite period of time in the Omaha *Daily World-Herald*. One of the grounds of protest is that no such newspaper is published in Douglas county. The proofs adduced on the hearing before the board of fire and police commission disclose beyond the possibility of a doubt that no newspaper is

published in Douglas county under the heading or name of "Omaha *Daily World-Herald*," but that said term is employed to designate the *Morning World-Herald* and *Evening World-Herald* published at Omaha by the same corporation. Both publications are entered in the mails and postage is paid thereon as the *Daily World-Herald*. In view of these facts, suppose an indictment should be returned charging the accused with the publication of a certain libelous article in the Omaha *Daily World-Herald*, could a conviction be had by proof of the insertion of such article in the *Morning World-Herald* or *Evening World-Herald*, or both of them combined? Clearly not, since there would be a fatal variance between the averments and proofs. So in the case at bar there is a failure of evidence to establish that any newspaper is published in Douglas county under the particular heading or name stated in the proof of publication filed with the license board. But this fact alone did not divest such board of jurisdiction to grant a license to appellant herein, for the evidence is clear and undisputed that the notice in question appeared for the length of time required by law in the *Morning World-Herald* and in the *Evening World-Herald* as well. If these publications constituted a single newspaper, having the largest circulation in Douglas county, the remonstrance was without merit, and must fail in its purpose.

Counsel for appellants insist that the *Morning World-Herald* and the *Evening World-Herald* are the morning and evening editions of the same paper, and constitute a single newspaper. In *Rosewater v. Pinzenscham*, 38 Neb. 845, it was said: "Whether or not the several editions of a daily paper are separate and distinct publications is a question of fact to be determined from the proof, in the first instance, by the license board. If the matter published in each edition of a daily paper is not substantially the same, and each edition has a different heading or name, and is sent to different subscribers, it would be quite clear that the combined circulation of all

cannot be counted, for the purpose of ascertaining the newspaper in which notices like the one in question should be published. * * * All that the law requires is that the notice shall be published in the newspaper having the largest circulation in the county. If several editions of a daily paper in fact constitute but one paper, then the notice must be published in each of said editions. If each edition is a separate and distinct publication, a publication in one, if the same has the largest circulation in the county, will be sufficient." No reason has been suggested for departing from the doctrine above stated, and it will be adhered to at this time. It is conceded by counsel for applicant that the *Morning World-Herald* and the *Evening World-Herald* usually are not delivered to the same subscribers, and for the purposes of this case, that the circulation of the Omaha *Evening Bee* at the time of the trial exceeded that of either the *Morning* or *Evening World-Herald*. It required no argument to show that publications claimed to be the two editions of the *World-Herald* are not published under the same heading or name, one being called the *Morning World-Herald* and the other the *Evening World-Herald*. It may be, as suggested in argument, that the words "Morning" and "Evening" are merely descriptive of the time of day the publications are made, but each word is none the less a portion of the name or heading of the publication.

A question quite analogous to the one we are considering was determined in *Russell v. Gilson*, 36 Minn. 366. The county board of Hennepin county designated the Minneapolis *Tribune* as the paper in which the delinquent tax list and notice should be inserted. The publication was made in the Minneapolis *Weekly Tribune*, which paper was published by the same company that issued the Minneapolis *Daily Tribune*. It was held there was no legal publication of the list and notice, the court saying: "In short, there was no paper of the name designated by the board, and the one in which the list and notice was published was not any paper designated by

the resolution. It is immaterial that both papers were published by the same company. It is the newspaper, and not the publisher, that is required to be designated. Although a part of the name of each was common to both, yet the names of the two papers were just as different as if, for example, one had been called 'The Minneapolis Commercial Tribune,' and the other 'The Minneapolis North Star Tribune.'"

In the present case we do not wish to be understood as holding that the difference in the names "*Morning World-Herald*" and "*Evening World-Herald*" alone is sufficient to establish that they constitute two newspapers and not merely two editions of the same paper. Another element is to be taken into consideration in determining the question in dispute, namely, are the contents of the *Evening World-Herald* and the *Morning World-Herald* substantially the same? The court below expressly found that the contents of these two publications issued on the same day, or the editions of one newspaper, as claimed by counsel for applicant, are not substantially alike, and that such publications do not constitute a single newspaper. As already indicated, the court below likewise found that the Omaha *Evening Bee*, at the date of the hearing before the license board, had the largest circulation in Douglas county of any newspaper then published therein. This court is unanimous in the opinion that these findings are sustained by the proofs. It can serve no useful purpose to discuss the evidence, or to point out the particular portions thereof upon which we base our conclusion. The facts are perfectly familiar to both parties to this controversy, and it would unduly prolong this opinion, and that too without profit, to set out a synopsis of the testimony. We decline in this case, in obedience to the universal rule obtaining in this court, to disturb a finding based upon sufficient competent evidence.

There is another important inquiry which is presented by the record, and that is, did the Kitchen Brothers

Hotel Company act in good faith in the selection of the newspaper in which the notice of the application for a license was inserted? If bad faith cannot be imputed to it in that regard, then, under the rule announced in *Lambert v. Stevens*, 29 Neb. 283, and *Rosewater v. Pinzenscham*, 38 Neb. 835, the license was properly granted. The record shows that prior to the filing of the application for license the board of fire and police commissioners of the city of Omaha adopted the following resolutions, which were spread upon the records of said board:

"*Resolved*, That the liquor dealers are hereby advised that under the law they should publish their notices in the newspaper of largest circulation in Douglas county for two weeks, and that these publications should be completed before the expiration of their present licenses.

"*Resolved*, That this board will abide by and recognize the decision of the board made upon the 3d day of January, 1896, wherein, after an investigation, it was found that the *Daily World-Herald* was the paper of the largest circulation in Douglas county, until the further order of this board."

The adoption of the foregoing had some influence with the applicant herein in determining the newspaper in which the notice of its publication should be inserted. In *Rosewater v. Pinzenscham, supra*, we condemned, as being unauthorized, the practice of license boards designating the newspaper in which the publication of notices like the one before us should be made. We adhere to everything we then said upon the subject, and emphasize our disapproval of the adoption of the foregoing resolutions, as tending to unduly influence liquor dealers, druggists, and saloon-keepers in the publication of notices of their applications for liquor licenses. The evidence introduced to establish the good faith of the applicant herein is quite unsatisfactory, but we are all agreed that bad faith is not so clearly made by the evi-

dence as to justify us in disturbing the finding of the court below on that question. The judgment is accordingly

AFFIRMED.