JOHN ROSENBERG, APPELLEE, V. U. S. ROHRER, APPELLANT.

JOHN R. FREITAG, APPELLEE, V. U. S. ROHRER, APPELLANT.

JOHN CURRY, APPELLEE, V. U. S. ROHRER, APPELLANT.

PAUL SCHISSLER, APPELLEE, V. U. S. ROHRER, APPELLANT.

FRANK J. NEYLON, APPELLEE, V. U. S. ROHRER, APPELLANT.

FILED FEBRUARY 20, 1909. Nos. 15,980, 15,981, 15,982, 15,983, 15,984.

1. **Intoxicating Liquors:** PETITION FOR LICENSE: BURDEN OF PROOF. In an application for license to sell intoxicating liquors, to which a remonstrance was filed wherein it was claimed that the petition was not signed by the requisite number of freeholders, the burden of proof was upon the petitioner to establish by competent evidence the fact that a sufficient number of the petitioners were freeholders.

2. ——: ——: EVIDENCE. In such case, neither the certificate of the register of deeds of the county that the signers were freeholders, nor the testimony of the deputy assessor who made the last assessment, to the same effect, would be competent evidence. The introduction of deeds of conveyance to the signers of the petition, ranging in dates from 1879 to 1907, while competent to prove that the signers had at one time owned the real estate, were therefore admissible, but did not alone establish the fact of ownership at the time of signing the petition, no other competent proof of present ownership being offered.

3. ——: LICENSE: ORDINANCES. Under the law governing the traffic in intoxicating liquors within the limits of cities and villages, such traffic can only be legally carried on under ordinances duly passed by the corporate authorities thereof. Until this is done no application can be made and no steps taken toward the procurement of a license to sell liquors within the limits of such coropration (*State v. Andrews*, 11 Neb. 523); but a general ordinance, applicable alike to all cases, fixing the amount of license fee to be charged, and prescribing the procedure to be followed in making the application, the hearing and issuance of the license is sufficient.

4. ——: PETITION FOR LICENSE: COUNCILMEN: QUALIFICATION. A petition for a license to A and B, consisting of the requisite number of signers, was signed by a member of the city council by whom the petition was to be heard, and presented to the city clerk. Upon the discovery that the signature of the councilman would disqualify him from acting on the application, his name was

erased, the petition withdrawn, and another was filed asking for a license for B alone, and which was not signed by the councilman. *Held*, That signing the first petition disqualified the councilman, and that the erasure of his name and the withdrawal of the petition did not remove the disqualification.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Reversed with directions.*

*J. W. James, R. A. Batty* and *H. F. Favinger,* for appellants.

*W. P. McCreary* and *M. A. Hartigan, contra.*

REESE, C. J.

These cases are appeals from the judgment of the district court for Adams county in affirming the action of the city council of the city of Hastings, whereby licenses to sell intoxicating liquors were issued, severally, to each of the plaintiffs. The causes are separately briefed and presented here, but were argued and submitted at one hearing, and will all be disposed of in this opinion as each case appears to demand under the rules of law deemed applicable. A remonstrance was filed to each petition, some of the grounds of objection being common to all, one of which is that the petition is not signed by the requisite number of freeholders. This placed the burden of proof upon the applicant to show by competent evidence that the signers of his petition were all freeholders. *Lambert v. Stevens,* 29 Neb. 283; *Brown v. Lutz,* 36 Neb. 527.

The question then arises: Was this jurisdictional fact established by competent evidence? In Rosenberg's case, no one of the signers was called for the purpose of proving the fact of the necessary ownership of real estate; but the deputy assessor was called, who testified that he was aquainted with each of the petitioners, naming them, and that the petitioner resided in the proper ward of the city and owned real estate therein. He was then presented

with a deed conveying real estate to the petitioner, and identified the grantee named in the conveyance as the signer of the petition. The deed was then offered in evidence and admitted over the objection of the remonstrant. Thirty-one of such deeds were introduced bearing dates ranging from the year 1879 to that of 1907. Nothing was offered to show that no subsequent conveyances had been made, nor that the grantees named in the deeds had not been divested of their title. Was this sufficient, the fact of the competency of the signers having been denied? That the deeds were competent evidence must, we think, be conceded, for they would tend to establish the fact that the signers were, at one time, freeholders. But was that sufficient proof that they were such at the time they signed the petition in April, 1908? We think not. In *Batten v. Klamm*, 82 Neb. 379, we held that the usual rules of evidence must be applied to the proof introduced to prove that the signers of the petition were freeholders, and that their affidavits were not competent for that purpose. It is said in the opinion: "One reason for the rule is that by the use of affidavits the adverse party has no opportunity to cross-examine the witnesses. This alone, we think, should be a sufficient reason for holding that the affidavits were incompetent. The remonstrators are as much entitled to examine the witnesses upon this question as upon any other issue which may be presented." It is true, as said in *Starkey v. Palm*, 80 Neb. 393, that the statutory requirement as to proof of the possession of a freehold estate in land is not that the evidence be so conclusive as would be requisite to enable the petitioners to recover in ejectment against an adverse claimant, yet the proof should be sufficient to establish, *prima facie* at least, the fact of the ownership of the legal title at the time of signing the petition. The evidence submitted may have been sufficient to prove title at a more or less remote time in the past, but it did not meet the requirements of the law.

There is in the record a certificate by the register of

deeds of Adams county that persons of the same names as those to the petition "are freeholders in the third ward of the city of Hastings," but there is no further or other identification of the parties, and, if there were, the certificate to the conclusion that they "are freeholders," without stating any facts, could not be sufficient. It follows that plaintiff did not show himself to be entitled to the license, and it should not have been issued.

In the case of the application of John Curry, we find the record the same as in the Rosenberg case, except that there is an additional certificate by the register of deeds, which contains no names, but certifies that "30 of the signers of the within petition are freeholders in the Third ward of the city of Hastings as the same now appears of record in this office." This certificate is attached to the petition. As it adds nothing to the force of the evidence, the same rule will have to be applied as in the Rosenberg case.

The record in the Schissler case is the same as in Rosenberg's, and the result must be similar, and therefore no further reference to it need be made.

The case of Neylon presents a like condition, with the exception that it was admitted of record that 15 of the 34 signers to the petition were freeholders of the Third ward of the city of Hastings. The result must therefore be the same.

In Freitag's case competent proof that the signers of the petition were freeholders in the Third ward of the city was either made, or the fact admitted. So far, then, as that question was concerned, the applicant was entitled to the license sought. However, other questions are presented which it is necessary to notice.

It is contended that there is no provision by statute permitting a license to be granted in a city of the class to which Hastings belongs; that the statute simply delegates the powers to the municipality, and that the city can act in a given case only by ordinance. The record shows that a general ordinance was passed in 1903, fixing

the license fee and providing the procedure to be followed, but, as we understand counsel, the claim is made that this is not enough, and that the license in no case can be authorized except by a special ordinance. *State v. Andrews,* 11 Neb. 523; and *Payne v. Ryan,* 79 Neb. 414, are cited in support of the contention. We do not understand those cases to so hold. It is true that provision must be made by ordinance for the issuance of licenses, but that provision may be made by a general ordinance, applicable to all cases, and when that action is taken 'the council may order licenses to issue when their provisions have been complied with. While the ordinance before us is not as specific as might be desired, yet we think it is sufficient to authorize the issuance of a license when the provisions of law and the ordinance are met. It is also insisted that the ordinance is insufficient for the reason that it does not provide punishment for its violation. This doubtless is unnecessary, as proper penalties may be, and no doubt are, provided in other ordinances.

The record of the hearing before the council presents an anomalous condition. The council consisted of eight members besides the mayor. Four voted in favor of the issuance of the license and four against, which created a tie. The mayor broke the tie by voting in favor of granting the license. Many objections were made by counsel for the applicant to evidence offered by the remonstrant, which were almost invariably sustained by the same vote. The disposition shown by four of the councilmen and the mayor to exclude the evidence offered by the remonstrant, some of which was clearly competent, cannot be commended.

It is shown by the record that Mr. C. L. Alexander was a member of the council at the time of the hearing of the application for the license, and that he had been such member for some time previous; that, a short time before the filing of Freitag's petition, a petition for a license had been presented by William Janssen and John R. Freitag; that said John R. Freitag for whom that petition was

presented is the applicant in this case; that C. L. Alexander, while acting as councilman and holding the office, signed the petition of William Janssen and John R. Freitag for such license, but, learning that the remonstrant, Rohrer, had obtained a photograph of the petition showing his name as one of the petitioners, he had caused his name to be erased, when a new petition was filed praying for a license for Freitag alone, this new petition being the one presented in this case. Upon the hearing of the application for the license, counsel for remonstrant objected to councilman Alexander sitting in the case, for the reason that during the municipal year he had signed a petition for the same petitioner and was therefore disqualified. The objection was overruled, and Alexander voted in favor of the issuance of the license. Had he refrained from voting, the majority would have been adverse to the petitioner, and the license would have been refused. By voting, he created the tie, and the opportunity was presented for the mayor to give the casting vote, which he did in favor of the license, and it was therefore issued.

The question is: Was Alexander disqualified by having signed the previous petition? Upon this inquiry we are of the unanimous opinion that he was disqualified; that his vote was void; and that, such vote changing the result, no valid license could issue. In *Vanderlip v. Derby,* 19 Neb. 165, two of the members of the village board had signed the petition, and it was held that they were disqualified. The same was held in *State v. Weber,* 20 Neb. 467; *State v. Kaso,* 25 Neb. 607; *Foster v. Frost,* 25 Neb. 731, and *Powell v. Egan,* 42 Neb. 482. In the latter case the members of the board had signed the petition, but it was afterwards withdrawn, their names erased and others substituted, and the petition refiled. It was held that the erasure of the names and the substitution of others did not remove the disqualification. In the opinion it is said: "The reason of the rule is that the village board acts judicially (*Hollembaek v. Drake,* 37 Neb. 680), and that by the petition for a license a signer declares, if not his

interest in the issuing thereof, at least his conviction that a license should issue, and of the existence of facts warranting the issuing of the license. He cannot, therefore, sit in judgment upon these questions and occupy the position of a disinterested person. The general principle is conceded by the defendant in error, but, he contends that when the petition was withdrawn and the names of three of the trustees 'erased and withdrawn' from the application their disqualification was removed, and they were not forbidden to act upon the petition when refiled, it being then in effect a new application. To so hold would be a veritable 'clinging to the bark.' The disqualification of signers does not ultimately depend on the fact that their names appeared as petitioners. It is based upon the fact that they were interested parties, or at least parties who have prejudged the case, and of this their signing the petition is conclusive evidence. The withdrawing of the petition and mechanical erasure of their names and the refiling of it with other names in their places did not alter the fact and did not avoid the principle upon which their disqualification is based."

We think it must be conceded that the rule above stated must be applied with full force to this case. In the former petition the councilman certified (to himself) that Janssen and Freitag "are men of respectable character and standing," and he "therefore pray(s) that a license to sell malt, spirituous and vinous liquors during the municipal year 1908" issue to them. This certificate and prayer are not in any sense weakened in effect by the fact that another name is coupled with the present applicant. He had already decided and certified that Freitag is a proper party to receive the license. What more or what greater advantage could any litigant desire, if untrammeled by conscience, than would be offered in such a case? In so far as the trier of fact in such a case would be concerned, the favored litigant would be certain of the decision, for "the court" would already be convinced as to the proper solution of the ultimate issues.

We are not surprised that the attorneys representing the petitioner should, in their justification, state to the mayor and council that they had no knowledge of the existence of the former petition with the name of the councilman attached until the close of the case, when they, with commendable candor, called for and introduced the petition in evidence.

It is contended by the appellee that this court is without jurisdiction to entertain this appeal, for the reason that the statute does not provide for the proceeding. An unusually able argument was made at the bar of this court in support of this contention. It is not deemed necessary for us to enter upon this inquiry at any great length, for the reasons that ever since the enactment of what is familiarly termed the "Slocumb Law," in 1875, it has been the practice of the court to review such cases. This has become a part of the jurisprudence of the state, and it cannot now be departed from. It follows that the district court erred in its judgment in each of the cases, and they are severally reversed and the causes remanded to that court, with directions to reverse the judgment and decision of the city council, order the licenses canceled, and that the costs be taxed to the petitioners.

JUDGMENT ACCORDINGLY.