FRED BENSON, APPELLEE, V. CHARLES OLSON, APPELLANT.

GIDEON PETERSON, APPELLEE, V. CHARLES OLSON, APPELLANT.

FILED OCTOBER 16, 1914. No. 18,674.

1. **Intoxicating Liquors: PETITION FOR LICENSE: SUFFICIENCY: BURDEN OF PROOF.** In an application for a license to sell intoxicating liquors, to which a remonstrance was filed, wherein it was claimed that the petition was not signed by the requisite number of freeholders, the burden of proof is upon the applicant to establish, by competent evidence, the fact that a sufficient number of the petitioners were freeholders at the time they signed the petition.

2. ———: ———: QUALIFICATION OF PETITIONERS: EVIDENCE. The evidence of each of 35 of said petitioners that he was a freeholder in the village where the license is sought to be obtained, together with a proper deed conveying to each petitioner real estate in fee simple, bearing date prior to the filing of the petition, together with the oral evidence of each petitioner that he owns the real estate conveyed to him, and is in possession thereof at the time of the hearing, is sufficient *prima facie* evidence to qualify him to sign such a petition.

3. ———: APPLICATION FOR LICENSE: CHARACTER OF APPLICANT: EVIDENCE. Evidence taken at the hearing on the application for license

that the applicant was a man of respectable character and standing sufficiently establishes that fact.

4. ———: ———: PROOF OF PUBLICATION. The affidavit of the publisher of a newspaper accompanying and annexed to a notice of the filing of an application for a license for the sale of intoxicating liquors, after giving the name of the paper, which states that said newspaper has the largest circulation in the county in which the application is made, that the printed notice attached was to his personal knowledge published daily in such newspaper for two weeks prior to the time of the hearing on the application, is *prima facie* evidence of the publication of the notice, and that the same was inserted in the proper newspaper.

5. ———: ———: ———: IMPEACHMENT. Such affidavit may be impeached by competent evidence, but, where no evidence is offered for that purpose, it will be sufficient to authorize the board to act on the application.

6. ———: ———: DISQUALIFICATION OF BOARD. The remonstrator offered to prove by a member of the board, before whom the application was pending, that he had formed an opinion respecting the character and standing of the applicant prior to the filing of the petition, and that he had expressed his opinion in that respect, and has the same opinion still. Counsel for the applicant withdrew his previous objections to such offer, and the offer was not renewed. *Held*, not sufficient to establish the fact of the disqualification of the member of the board.

7. ———: ———: EXISTENCE OF CITY ORDINANCE: PRESUMPTION ON APPEAL. Where, on the hearing of an application for a license to sell intoxicating liquors in an incorporated village, the remonstrator makes no claim of the nonexistence of an ordinance authorizing the issuance of such a license, on appeal the existence of such an ordinance may be presumed.

8. ———: PETITION FOR LICENSE: IDENTITY OF PETITIONERS. Where one testifies at the hearing that he signed the petition for a license, and produces a deed showing his full name to have the same initials as those affixed to his surname as signed to the petition, such testimony is sufficient *prima facie* to identify him as being the same person who signed the petition.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*William V. Allen* and *William L. Dowling,* for appellant.

*H. C. Vail, contra.*

Benson v. Olson.

BARNES, J.

This is an appeal from a judgment of the district court for Madison county affirming the action of the board of trustees of the village of Newman Grove in granting licenses to Fred Benson and Gideon Peterson to sell malt, spirituous and vinous liquors in said village for the license year of 1914.

It appears that on the 24th day of May petitions were presented to the board of trustees, in the usual form in such cases, each signed by some 40 persons, who alleged therein that they were resident freeholders of said village; that the applicants were each of them men of respectable character and standing, and praying that a license be issued to each of them. To the petitions one Charles Olson filed remonstrances, denying that the petitioners were resident freeholders, and alleging, among other things, that no proper notice of the filing of the petitions had ever been given; that the notices and affidavits or proofs of service of the notices were not sufficient to confer jurisdiction on the board of trustees to act on said petitions. A collateral attack was also made on the previous election, which was held in said village, at which the question as to whether licenses for the sale of intoxicating liquors for the current year should be granted, and many other reasons were set forth as to why the licenses should be refused. The board fixed the 10th day of June, 1914, for the hearings on the applications, at which time there was a trial before the board, and licenses thereafter were granted to the applicants. The remonstrator appealed to the district court, where, as above stated, the action of the board of trustees was affirmed.

The denial of the qualifications of the signers to the petitions put that fact in issue, and the applicants were of course required to establish the qualifications of the signers. The record discloses that, in order to establish that fact, the applicants brought at least 35 of the petitioners before the board, and each of them testified that he resided in the village of Newman Grove, and was the owner of real estate in said village, that he signed the petitions;

and a part of them testified that they had known each of the applicants for several years, and that they were men of respectable character and standing. The following, in effect, is what each of the signers testified to on the hearing: "Q. Where do you live, Mr. Witt? A. Newman Grove. Q. What do you do? A. Sell prunes and calico— general store. Q. How long have you been in the business here? A. About 21 years. Q. Have you got a deed to your land? A. I have one here. I have three or four others. Q. What does it purport to be? A. That is a deed from Clara C. Krogh and husband to B. F. Witt and J. L. Witt. The corner building over here—store building. Q. What sized building is that? A. It is 90 feet long and the width of the lot; that is, about 24 or 25 feet. Q. Do you occupy that building now? A. Yes, sir. Q. Do you own it now? A. I do, my wife don't. I own everything in my name. My brother Jake has an interest in this lot. Q. You and your brother own it together? A. Yes, sir. Q. Jointly? A. Yes, sir. We have two or three other properties." Thereupon a deed conveying the property, which is situated in Newman Grove, to the witness in fee simple was introduced in evidence over the objections of the remonstrator, and the witness was asked: "Q. Do you own it (the property) now? A. I do."

Witt's deed, introduced in evidence, bore date of the 27th day of February, 1899. As above stated, the testimony of at least 35 of the petitioners was taken, and each of them testified that he was the owner of real estate in the village of Newman Grove at the time of the hearing. Each of them introduced in evidence his deed conveying certain real estate from the grantors named therein to himself. Each of the deeds bore date prior to the time when the applicants filed their petitions, and each testified that he owned the property conveyed thereby at the time of the hearing.

Counsel for the remonstrator contend that the evidence was insufficient to authorize the board of trustees to act on the petitions of the applicants; in other words, that the signers to the petitions must each show that he was a

freeholder in the village of Newman Grove, and establish his title to his freehold with as much particularity as would be required in an action of ejectment. In support of this contention counsel cite *Rosenberg v. Rohrer,* 83 Neb. 469. In that case it was held that neither the certificates of the register of deeds nor the testimony of the deputy assessor was competent evidence that the petitioners were freeholders. It was further held that the introduction of deeds of conveyance to the signers ranging in dates from 1879 to 1907, taken alone, did not establish the fact of their ownership at the time of signing the petition; no other competent proof of present ownership being offered. It was not decided, however, that the introduction of deeds of conveyance, together with proof that each of the signers was the present owner of the premises described in his deed, as was done in this case, was not sufficient to establish such ownership, at least by *prima facie* evidence.

In *Starkey v. Palm,* 80 Neb. 393, it was held, in substance, that the statutory qualification of a freeholder as a petitioner upon an application for a saloon license does not require evidence so conclusive as would be requisite to enable him to recover in ejectment against an adverse claimant, but it is sufficient if he has shown that fact by record or documentary evidence, or both, and in good faith claims and believes himself to have a freehold estate in lands within the prescribed district within which he resides. We think this is the correct rule.

The several deeds introduced in evidence show that the signers were freeholders prior to the 24th day of May, 1914, which was the date on which the petitions were signed and filed. The oral evidence of the signers show that each of them owned the real estate described in his deed at the time of the trial before the board, and was in possession thereof at that time. This necessarily shows *prima facie* that they were freeholders on May 24, 1914.

Again, the evidence of 35 of the signers shows that each of them signed the petitions, and there was considerable evidence showing, or tending to show, that the petitioners

were men of respectable character and standing. This fact was amply proved at the hearing before the board, and, as we view the case, was sufficient evidence of the qualifications of the signers to authorize the board to act on the petitions of the applicants.

It is next contended that the licenses should have been refused because the notice published in the Norfolk Daily News was insufficient to confer jurisdiction on the board to act. No objections were made to the form of the notice, but it is claimed that it was not published a sufficient length of time before the board took action on the applications. Section 3845, Rev. St. 1913, provides: "No action shall be taken upon such application until at least two weeks' notice of the filing of the same has been given by publication in a newspaper published in the county having the largest circulation therein." By the proofs of publication attached to each of the notices, it appears that it was first published on the 26th day of May, 1914, and the last publication was on June 8, 1914, thus making 14 consecutive publications. It thus appears that the notices were published for two weeks prior to June 10, which was the date on which the hearing on the applications was commenced.

In *Rosewater v. Pinzenscham,* 38 Neb. 835, it was said: "Notice of an application for a license to sell intoxicating liquors must be published at least two weeks in a newspaper published in the county having the largest circulation therein, before any action can be taken on the application. When the notice is inserted in a daily paper, it must be published daily for the statutory period."

In *State v. City of South Omaha,* 33 Neb. 876, it was decided that a notice of an application for a license to sell intoxicating liquors must be published for two weeks in each issue of the paper. Where the paper containing the notice is a daily, the notice must be published daily; but, in case the paper having the largest circulation in the county is published weekly, the notice must be published therein in every issue of such paper for two weeks.

The proof of publication in this case shows that the notices were published daily in the Norfolk Daily News for

14 days, and no action was taken on the applications until two days after the date of the last publication. We are therefore of opinion that the notice was sufficient, and the board had jurisdiction to act on the applications.

It is further claimed that there was no competent evidence before the board that the Norfolk Daily News was the paper having the largest circulation in Madison county. That fact, however, was clearly set forth in the affidavit attached to the notice, and, while it may be conceded that the contested facts in a remonstrance are not as a general rule to be proved by affidavits, yet the code provides that certain things may be proved by affidavit. Section 7936, Rev. St. 1913, provides: "An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process, in an action, to obtain a provisional remedy, an examination of a witness, a stay of proceedings, or upon a motion, and in any other case permitted by law." The affidavit of the publisher is *prima facie* evidence of the publication of the notice, and that the same was inserted in the proper newspaper.

In *Rosewater v. Pinzenscham, supra,* it was said: "The affidavit of the publisher of a newspaper, accompanying and annexed to such a notice, stating, after giving the name of the paper, 'that said newspaper has the largest circulation in Douglas county, and that the printed notice hereto attached was, to his personal knowledge, published daily in the said daily newspaper from the 15th day of December, 1892, to the 28th day of December, 1892,' is *prima facie* evidence of the publication of the notice, and that the same was inserted in the proper newspaper. The affidavit may be impeached by competent evidence." But no evidence was offered in this case impeaching, or tending to impeach, the statement in the affidavits that the Norfolk Daily News was the paper having the largest circulation of any newspaper in Madison county. It follows that the proof of publication was sufficient, and this contention of the remonstrator was properly overruled.

It is further contended that the district court erred in sustaining the rulings of the village board refusing the remonstrant the right to show that the several members of the board were disqualified to act on the petitions. It appears that counsel for the remonstrator put the following questions to Mr. Gustafson, a member of the board: "Q. Mr. Gustafson, you know Mr. Fred Benson and Mr. Gideon Peterson, do you not? A. Yes, sir. Q. And had you formed some opinion as to their character and standing before the case was tried?" This question was objected to as immaterial, and the objection was sustained. Counsel for the witness then made the following offer: "I offer to show by the witness on the stand that he had formed an opinion respecting the character and standing of each of the applicants prior to the filing of the petitions in this case and prior to the filing of the remonstrances thereon, and that he entered this case with such an opinion and has prejudged the case, and that he has at different times expressed his opinion in that respect, and still has such an opinion, and to that end I propound the following question: Had you formed an opinion of the character and standing of the applicants Gideon Peterson and Fred Benson at and prior to the filing of the remonstrance against said petitions by Charles Olson, in this case?" Thereupon the counsel for the petitioners stated: "The petitioners withdraw any objection to any question that goes to the question whether he has expressed any opinion before the hearing in this case, but, as to whether he has formed an opinion, the petitioners object to it as irrelevant and immaterial, and as trying to impeach the judgment of the board before they have passed on the question. The petitioners make no objection to asking any member of this board any question about any opinion he has expressed previous to this hearing." No further offer was made of any evidence impeaching, or tending to impeach, the qualifications of the members of the board. This offer was clearly incompetent, and, if the evidence had been received, it would not have been sufficient to accomplish that purpose.

It is further contended that the licenses should have been refused because of the testimony of the applicants as to their preparations for opening saloons in case the licenses were granted. It is claimed that Peterson bought the stock of liquors of a former proprietor of a saloon in Newman Grove before he had obtained his license, but the testimony shows that neither Peterson nor Benson had completed such purchase, and we are of opinion that, if they had made such a purchase contingent upon their obtaining a license to sell intoxicating liquors, it would not have disqualified them from obtaining their licenses, and the board would not have been justified in refusing to grant them licenses on that account.

Again, it is claimed that the licenses should have been refused because the applicants had tentatively agreed to employ certain bartenders, who in 1913 had worked for persons who it was alleged had sold liquors in violation of the law. There is no statute in this state that prohibits a board from granting a license to an applicant because he may employ a bartender who had worked during the previous year for a man who had violated the liquor law. The general right of opposition to the granting of a license must be limited to the cases specified by law.

It is also contended that the board had no authority to grant licenses to the applicants, for the reason that it does not affirmatively appear that there was an ordinance authorizing them to grant the licenses. In the absence of any contrary showing, it will be presumed, on appeal, that the village of Newman Grove had enacted such an ordinance, and that it conferred upon the board the right to grant liquor licenses. 89 Am. Dec., note, p. 669.

Finally, the fact that the attorneys for the remonstrator have devoted some six pages of their brief to the contention that the persons who testified did not identify themselves as the ones who signed the petitions by their initials, and therefore the petitions were not sufficient, has not been overlooked. We are of opinion that, where a man who has signed a petition by his surname and the initials of his Christian name, testifies that he signed the same, and in-

troduces a deed in evidence by which real estate is con
veyed to him, which shows that the initials of his full
Christian name are the same as those signed to the peti-
tion, this *prima facie* sufficiently identifies him as having
signed such petition.

In conclusion, it appears that there was no attempt to
show that there were not 30 *bona fide* freeholders who
signed the petitions, and the evidence is at least sufficient
*prima facie* to establish the qualifications of the signers.
It sufficiently appears that the notices of the filing of the
applications were published in the Norfolk Daily News,
a paper having the largest circulation of any newspaper in
Madison county. The notices served their purpose, for the
remonstrator appeared before the board and urged all of
the objections he could find to the issuance of the licenses.
The hearing before the board was fairly conducted, and,
as we view the record, no error was committed by the dis-
trict court in affirming the judgment of the board by which
the licenses in question were issued. The judgment of the
district court is therefore

AFFIRMED.

ROSE, J., not sitting.