ALBERT LIVINGSTON ET AL., APPELLANTS, V. M. V.
COREY, APPELLEE.

[FILED NOVEMBER 5, 1891.]

1. **Liquors:** LICENSE: APPLICATION: SIGNERS AFTER PUBLICA-
TION OF NOTICE. After a petition for a liquor license was filed
with the city clerk and notice thereof was given, the city coun-
cil permitted other freeholders to sign the petition. *Held,* No
error, and that it was not necessary to republish the notice after
such amendment.

2. ———: ———: ———: THE EVIDENCE examined, and *held,* that
the application for a license was signed by the requisite number
of qualified petitioners.

3. ———: ———: APPLICANT DISQUALIFIED BY PRIOR VIOLA-
TION OF LAW. Where, on the hearing of a remonstrance against
the granting of a liquor license, it is satisfactorily proven that
the applicant has, within a year, sold intoxicating liquors to a
minor, or has, during the same period, sold adulterated liquors,
the applicant is not entitled to a license.

4. ———: ———: ———: PROOF. Such violations of the law may
be established by the records of a court showing the conviction
of the applicant, or by any other competent evidence.

5. ———: ———: THE OBJECTION that there was no ordinance in
force authorizing the granting of a saloon license, cannot be
raised for the first time in the supreme court.

APPEAL from the district court for Clay county. Heard
below before MORRIS, J.

*Thos. H. Matters,* for appellants, cited: *Goodwin v.
Smith,* 37 Am. Rep. [Ind.], 144; *State v. Bennett,* 19 Neb.,
207; *State v. Weber,* 20 Id., 467; *State v. Kaso,* 25 Id.,
609; *State v. Hartfiel,* 24 Wis., 60.

*Leslie G. Hurd, contra,* cited: *O'Dea v. Washington Co.,*
3 Neb., 122; *Struthers v. McDowell,* 5 Id., 494; *State v.
Russell,* 17 Id., 203; *Burley v. Millard,* 11 Id., 289; *Fos-
ter v. Devinney,* 28 Id., 416.

NORVAL, J.

On the 11th day of April, 1890, M. V. Corey, the appellee, filed in the office of the city clerk of the city of Harvard his petition for license to sell malt, spirituous and vinous liquors in the first ward of said city, for the municipal year ending April 30, 1891. On the date fixed in the notice for hearing the application the appellants filed with said clerk a remonstrance against the issuance of the license. By agreement of parties the matter was heard April 30, when, after hearing the testimony, the city council overruled the remonstrance and granted the license. An appeal was taken by the remonstrants to the district court, where the decision of the city council was affirmed.

The case is before us on appeal. It is a question whether, in the absence of a statutory enactment providing for appeals from the district court to the supreme court in proceedings like this, the proper remedy is not by petition in error; but, as the appellee has not filed a motion to dismiss, we will not now decide the point.

The petition, when filed, was signed by thirty-four persons claiming to be resident freeholders of the first ward of the city of Harvard. A notice of the filing of the same was published in the Harvard *Courier* for more than two weeks prior to the date named for the hearing. After the notice was given, and the remonstrance was filed, the council allows the petitioner to amend his petition by permitting Let Webster, L. L. Chambers, and Catherine Douse to sign their names to the application. The appellants claim that the council had no jurisdiction to act upon the petition thus amended, for the reason no notice was given of the amendment. This cannot be. The council acquired jurisdiction by the filing of a proper petition and the giving of the notice required by the provisions of section 2 of chapter 50 of the Compiled Statutes, and having once obtained jurisdiction, they did not lose it by allowing

other persons to sign the petition, nor was it necessary to republish the notice after such amendment was made, any more than it would be essential to issue and serve a summons in a civil action after the filing of an amended petition. We have no doubt that the council had the power to permit the amendment to be made. After the petition was filed, three of the petitioners presented to the council a written request that their names be taken off the petition, and two of the other signers removed from Harvard after signing the petition. The amendment was certainly in furtherance of justice. Doubtless the appellants could have, if they so desired, filed an additional remonstrance. They were not taken by surprise, as the hearing did not take place until two days after the names were added to the petition, besides no further time was asked in which to prepare for trial.

The case of *Pelton v. Drummond*, 21 Neb., 495, cited by appellants, is not in conflict with the views above expressed. It was there ruled that the authorities have no power to take any action on a petition for a liquor license until the statutory notice has been given. We adhere to the rule there stated, but whether such notice must be republished after new names are added to the petition was not involved nor considered in the precedent cited.

The petition was signed by the requisite number of qualified petitioners. It bore the names, of thirty-seven persons, counting the three names which were added. It was admitted on the trial that G. W. Updike and W. R. Martin were non-residents of the city of Harvard. It also appears that A. L. Kaufman was not a freeholder, and that Miles Wilson, A. A. Keller, and Conrad Miller, who signed the petition, filed a written request withdrawing as petitioners. The undisputed testimony shows that all the other signers were qualified petitioners, so that after deducting the six names mentioned, there remained thirty-one signers, who were resident freeholders of the first ward

of the city of Harvard, or one more than the statute requires. The petition was, therefore, sufficient.

The remonstrance alleges that M. V. Corey had violated the law during the preceding year by selling liquors to minors. Section 8 of said chapter 50 prohibits the sale of malt, spirituous, and vinous liquors, or any intoxicating drinks, to any minor under twenty-one years of age, and section 3 of the same chapter provides that "If it shall be satisfactorily proven that the applicant for license has been guilty of the violation of any of the provisions of this act within the space of one year, or if any former license shall have been revoked for any misdemeanor against the laws of this state, then the board shall refuse to issue such license."

The testimony of Frank Gill, a minor seventeen years old, is to the effect that he obtained a glass of beer at Corey's saloon, either of Mr. Corey or of his bartender, Miller, on Christmas night preceding the hearing before the city council. There is also testimony tending to prove that one Sherman Dunn, a minor, bought and drank intoxicating liquors at appellee's saloon within a year prior to April 30, 1890. M. V. Corey denies under oath, that either Gill or Dunn procured liquor at his place of business to his knowledge. William Miller, the bartender, testified that he could not say whether he sold any beer, whisky, or liquor to Gill or not, but he fails to deny making the sale to Dunn. The testimony is not conflicting. The positive testimony of the witnesses produced by the remonstrators, as to liquors being procured in appellee's saloon by Gill and Dunn, not having been denied by Miller, who tended bar, the charge of selling liquors is well supported by the evidence, and, for that reason, the license should have been denied.

Another ground of the remonstrance was that the petitioner violated the law by selling adulterated liquors. The disposing of such liquors, by gift or sale, is forbidden by section 13 of the liquor law.

27

The proof shows that a pint of whisky which was sold by the appellee on the 24th day of April, 1890, to one Bradford Stone, was placed in the hands of Dr. Martin Clark, a chemist of Sutton, for analysis. Dr. Clark testified that he analyzed the pint of liquor, and had found that it contained common sugar and fusel-oil, and three and one-half grains of charcoal and tannate of iron; that the charcoal and tannic acid could have been produced by the liquor standing for some time in the barrel, but that the iron was an extraneous product. We quote from the testimony of the chemist as to the existence of fusel-oil in the sample analyzed, as follows:

Q. Now you say there was fusel-oil in it. Is not that an incident of distillation?

A. It is one of the products of distillation. It is especially in all crude whisky, it is found in large proportions in raw whisky, and also in high wines. It gradually disappears by aging of the whisky. In double-distilled goods there should be none.

Q. In redistillation, they take it out, do they not?

A. If the distillation is stopped at the right time, there would be none.

Q. Then all whiskies, except of the redistilled grade, have fusel-oil in them?

A. Yes; the first distillation would have fusel-oil.

Q. Was the quantity of fusel-oil in this sample that you analyzed, such as to lead you to suppose it had been introduced, or that it was as it came from the process of distillation?

A. I should think it was from the process of distillation; I should think it was as it came from the still.

The witness further testified that the sample given him for analysis had been thinned by water; that sugar was not to be found in pure whisky, and that fusel-oil was poisonous. It was the opinion of the chemist that the liquor had been adulterated.

We are satisfied from the testimony of the chemist that the liquor sold by appellee to Bradford Stone was adulterated, and his testimony was not contradicted by any other evidence taken at the hearing. True, Mr. Corey's testimony is to the effect that he did not adulterate the whisky, nor did any one else so far as he knew, yet that could make no difference. He was bound to know, at his peril, that the liquors were pure. The statute makes a person liable who, intentionally or innocently, sells or gives away adulterated liquors. Quite likely the fusel-oil was in the liquor when it left the still, yet it is likewise clear that the sugar, water, and the iron sediment were subsequently added. This constituted an adulteration, within the meaning of the statute. Proof that the appellee had violated the law in selling liquors to minors, or in selling adulterated liquors, was not confined to the record of a court showing his conviction, but on the hearing of a remonstrance against granting a license it may be proven, by any competent evidence, that the applicant has been guilty of any of the provisions of the law relating to the sale of liquors.

It is stated in brief of counsel for appellants that there was no law in force in the city of Harvard granting authority to the mayor and council to grant the license. This question was not raised by the remonstrance nor by the evidence, and will not be considered here. Parties protesting against the granting of a license must fairly present their objections to the council. The question of authority not having been made before the city council, it was not necessary to put in evidence the ordinances of the city authorizing the granting of license to saloon-keepers.

Complaint is also made by appellants in the brief of counsel that the findings of the district court are insufficient. Whether the judgment was based upon sufficient findings or not is immaterial, the case being here on appeal upon the merits. Appellants recognized the validity of the judgment by appealing.

Complaint is made of the overruling, by the city council, the motion of the remonstrants to compel the petitioner to first introduce his testimony.   In *Lambert v. Stevens,* 29 Neb., 283, in speaking of the burden of proof in proceedings like this, we said: "When the remonstrance denies any matter necessary to confer jurisdiction upon the granting power, as that certain signers to the petition are not freeholders, the burden is on the applicant to establish that they are qualified petitioners.   When the remonstrance sets up new matter, as that certain signers to the petition were made freeholders for the purpose of signing the same, or that the applicant has been guilty of a violation of any provision of the liquor law within a year, or that any former license has been revoked, the burden is upon the remonstrators to establish such new matter."   It therefore follows, from the logic of that opinion, that the burden was upon the appellee to establish that the persons signing the petition, who the remonstrance avers were not qualified petitioners, were in fact resident freeholders of the ward.   Likewise the burden was upon the remonstrators to prove that the petitioner sold adulterated liquors and sold liquors to minors.   The appellee should have first introduced his evidence upon the question of the qualification of the petitioners, but his failure to do so is not sufficient ground for reversal.   The error was waived by taking an appeal from the decision of the city council to the district court. The appeal required a decision upon the merits, and was not a proceeding to review errors made by the council on the hearing of the remonstrance.

The order of the city council granting the appellee a license and the judgment of the district court affirming the same are reversed, the remonstrance is sustained, and the application for a license is denied.

JUDGMENT ACCORDINGLY.

THE other judges concur.