N. J. MAXWELL ET AL., APPELLANTS, V. JAMES REISDORF, APPELLEE.

FILED NOVEMBER 28, 1911. No. 17,212.

1. **Intoxicating Liquors: LICENSES: RECORDS OF VILLAGE BOARD.** The record of a village board granting a license to sell intoxicating liquors must show all of the jurisdictional facts.

2. ———: ———: PETITION. The filing of a petition signed by the number of resident freeholders required by statute is essential to a village board's jurisdiction to grant a license for the sale of intoxicating liquors.

3. ———: ———: NOTICE. Two weeks' notice of the filing of a petition for a license to sell intoxicating liquors is essential to the licensing board's jurisdiction to grant a license.

4. ———: ———: ———. A new notice must be given before a valid license can be granted, where the names of the full number of qualified petitioners first appear on the petition at the time set for the hearing of a remonstrance.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Reversed with directions.*

*A. M. Post* and *R. P. Drake,* for appellants.

*Albert & Wagner,* contra.

ROSE, J.

The validity of a license to sell intoxicating liquors in the village of Creston is the subject of the controversy. James Reisdorf is licensee. N. J. Maxwell and others are

remonstrators.  After the license had been granted, re-
monstrators presented the record of the village board to
the district court, and there asked to have the license re-
voked.  From an adverse judgment they have apppealed
to this court.

The license is challenged on the ground that licensee
failed to give legal notice of the filing of the petition on
which the village board acted.  The facts material to the
determination of this question may be summarized as
follows: For the purposes of this appeal, a petition signed
by 30 resident freeholders was essential to the jurisdic-
tion of the board.  When the petition was filed with the
city clerk, April 14, 1911, it bore 30 names, but only 29
genuine signatures, the use of one of the names having
been unauthorized.  Beginning with that date notice of
the application was published for three consecutive weeks.
April 26, 1911, the city clerk appended to the petition the
following note: "Comes now Louise Lueschen, whose
name appears as one of the petitioners on petition of
James Reisdorf for liquor license, and asks that her name
be taken from said petition, as she herself had not signed
such petition, nor authorized any one else to sign her
name to such petition."  At a meeting of the board May
1, 1911, the remonstrance was read.  It is in this form:
"We, the undersigned, hereby remonstrate against the
issuing of a liquor license to one James Reisdorf, on pe-
tition now on file with the village clerk of said village.
The reason we object to the issuing of such license is that
there are not enough signatures of legal resident free-
holders on said petition."  The hearing of the remon-
strance was set for May 2, 1911, when the board allowed
three additional petitioners to sign the petition, and di-
rected the clerk to issue the license; the record of the
proceedings, showing, among other things: "It is ad-
mitted to the board that the signature of Louise Lue-
schen on said petition is not her signature, and that she
did not authorize any one to sign her name to said pe-
tition."  It thus appears that, when the petition was

filed and the notice published, it bore the authorized signatures of 29 qualified petitioners only, and remained in that condition until the time set for the hearing of the remonstrance. No further notice of the application was given after the number of authorized signatures had been increased.

On this record remonstrators contend: The petition as originally filed was not a legal one. It bore the names of 29 petitioners only, and was wholly insufficient for jurisdictional purposes. If it was made sufficient by the additional signatures, it became so for the first time May 2, 1911. Legal notice of the filing of the petition not having been published after it was made sufficient by additional petitioners, the board issued the license without jurisdiction, and its action is for that reason void.

Was the petition as originally filed sufficient to give the village board jurisdiction over the matter of granting a license? Was the notice of the filing of the petition containing the names of 29 petitioners only sufficient to meet the requirements of the statute? The law prohibits the sale of intoxicating liquors, except upon statutory conditions. Those conditions cannot lawfully be relaxed or modified by licensing boards or courts. Whether they impose a hardship upon an applicant for a license is not an executive or a judicial question. To procure a valid license, an applicant must comply with such conditions, and it is not within the power of those who administer the law to excuse him from doing so. The language of the law is: "No action shall be taken upon said application until at least two weeks' notice of the filing of the same has been given by publication." Comp. St. 1911, ch. 50, sec. 2. The terms, "application" and "the filing of the same" refer to the statutory petition signed by at least 30 resident freeholders, and do not apply to a petition bearing 29 signatures only. For the purpose of giving notice, the statute makes no reference to a petition which appears on its face to have 30 petitioners, and neither the licensing board nor the court

has any authority to interpolate such a provision. The statute requires the applicant to file the petition and to give the notice. The requirements of both are definitely stated. Where a village board issues a license, its record must show all of the jurisdictional facts. One of those facts is the filing of a petition signed by the requisite number of freeholders. It is not shown by the record of the proceedings before the board that there are less than 60 resident freeholders in the village. There is as good reason for asserting that a petition, to which all the names were signed without authority, is sufficient for the purpose of publication, though the use of such names has never been ratified, as there is for the contention that 29 genuine signatures and one unauthorized name meet the requirements of the statute, if they happen to appear upon the face of the petition. Prior to May 2, 1911, the board did not have before it the petition contemplated by statute. Within the meaning of the law, the document filed by the applicant April 14, 1911, was not a petition or application, and the filing thereof could not be made the basis of a legal notice. Not having had a sufficient petition until May 2, 1911, two weeks' notice of the filing thereof was essential to confer jurisdiction on the board to issue a license. *Zielke v. State,* 42 Neb. 750; *Pisar v. State,* 56 Neb. 455; *Pelton v. Drummond.* 21 Neb. 492.

Licensee, however, takes a different view of the law, and argues that the filing of the petition, the giving of the notice and the signing of the additional names with the permission of the board meet the requirements of the statute and make further publication unnecessary. To sustain this point he cites *Livingston v. Corey,* 33 Neb. 366, and *Thompson v. Eagan,* 70 Neb. 169. In the first of these cases the writer of the opinion was particular to make it clear that the petition as originally filed was signed by the requisite number of qualified petitioners. In the last of the cases cited by licensee the first is followed, and for the reason stated neither is in point.

For want of legal notice of the filing of the petition on which the board acted, the license was granted without jurisdiction, and is therefore void.

It follows that the judgment is reversed and the cause remanded to the district court, with a direction to cancel the license.

REVERSED.

SEDGWICK, J., dissenting.

The licensing board is not a court. It acts in an administrative and only quasi-judicial capacity. It is necessary for it to take some ministerial and administrative actions in order to get the matter ready for hearing. In every case in which this court has spoken of the jurisdiction of this board, it has plainly referred to its power to grant the license, and not to its method of obtaining, as we would say of a court, jurisdiction of the subject matter. The law does not require the board to give notice that there will be an application for license heard at a certain time. The party himself generally gives the notice without any action of the board whatever. The statute (Comp. St. 1911, ch. 50, sec. 2) provides that no action shall be taken upon said application until notice is given, and that is all the limitation that the law makes. There is no provision of the statute that can by any construction be made to mean that the board must give notice of the application, and that before it gives such notice it must be shown that it has genuine signatures on the petition. There is nothing of that kind in the law. In *State v. Weber*, 20 Neb. 467, the court said: "There was a petition before the board which on its face complied with such provision. In the absence of objection made within the time limited by other provisions of the same section, it would probably be sufficient." See, also, *Zielke v. State*, 42 Neb. 750. I am not aware that there has ever been a decision to the contrary. If the petition on its face appears to be all right and the board acts thereon without objection, the petition is sufficient. Louise Leuschen's name was upon the peti-

tion. She asked that her name be taken from the peti-
tion, and stated that she had not authorized any one to
sign her name. It was admitted upon the record by the
parties that she did not authorize any one to sign her
name. For the purpose of withdrawing her name from
the petition, it was immaterial whether she did or not,
as she had a right to withdraw her name, even if she had
signed it herself; but the question whether she author-
ized someone to sign her name or not is not a question of
forgery. The law would presume that the person who
signed her name supposed he had authority to do so, and
that if he did not it was an innocent mistake. Whether
he had or not was a question of fact, and if she had not
requested her name to be withdrawn, and it had been ob-
jected by the remonstrants that her signature was un-
authorized, it would have presented a question of fact
for the board to have determined. Again, if she knew
that her name was upon the petition, she would be bound
by it unless she raised objection; that is, it was her sig-
nature until she objected, and the board would be
justified in so considering it. If we apply the same rule
to these proceedings that we would to ordinary proceed-
ings, we would say that the purpose of the statute was
to give all parties interested an opportunity to be heard
upon an application for the license, and that this was
the reason for requiring notice, and that notice that an
application would be heard at a specified time was a full
compliance with the statute whether some names should
afterwards be withdrawn from the petition and others
substituted in their places or not. The board would not
have power (jurisdiction) to grant a license until a
petition was before it, as the law requires, and in this
case there was such petition before it, and it had power
to grant the license. There seems to be no reason for
supposing that this is a question of jurisdiction, and
that all the signatures on the petition must be genuine
signatures when the applicant publishes his notice. The
board has no power even to decide in what newspaper

the notice shall be published. This court has so decided. *Feil v. Kitchen Bros. Hotel Co.*, 57 Neb. 22. There is no reason why an application for license should not be treated, by the courts at least, the same as any other application before an administrative body. It is not the duty of the court to add technical restrictions any more than in any other proceeding. It is for the legislature, acting under the force of public opinion, to add additional technical restrictions if it is thought advisable to do so.

The majority opinion does not say anything about the above quotation from *State v. Weber*, 20 Neb. 467, one of the earlier cases and a leading case, a case that has been many times cited by this court and supposed to be followed as a precedent. In *Livingston v. Corey*, 33 Neb. 366, the names of three disqualified persons were upon the petition. If these were excluded, there remained 31. Three other petitioners withdrew their names, leaving 28. It does not appear when they withdrew their names. The indication is that they withdrew them before the publication of the notice was completed. It will seem quite clear from the opinion that this was the fact, although it is not definitely stated. If that was the case, the notice was not published while there was a valid petition before the board, and under the holding in the case at bar, as soon as these three men withdrew their names from the petition, the board was without jurisdiction. When these three men had withdrawn their names from the petition and before others were added, the board was without power to grant the license. There was no question of jurisdiction as we ordinarily apply the term to courts. It had power to allow others to sign the petition if desired, and allow still others to withdraw if they desired; in other words, it had power to make preliminary arrangements for a fair hearing, but no power to grant the license until the petition was completed. The court in that case said: "After a petition for a liquor license was filed with the city clerk and

notice thereof was given, the city council permitted other freeholders to sign the petition. *Held,* No error, and that it was not necessary to republish the notice after such amendment." In the case at bar, unless we over-rule the proposition in *State v. Weber, supra,* the petition was sufficient. until the objection was made that Louise Leuschen's name should not be counted. Until that time, the publication of the notice being complete, the board had power to grant the license. Undoubtedly the petitioner may appear before the board and withdraw his name from the petition or show that his signature was unauthorized, and so prevent the board from grant-ing the license, unless the petition is amended, but the petitioners cannot play fast and loose with the power of the board to allow amendments, in that way. The notice was published while the board had the petition before it with Louise Leuschen's name and without the question of fact determined as to whether or not she had authorized it; there having been no such objection made and no such question raised. Notice published under such circumstances is a good publication, and the effect of it is not destroyed by the substitution of one name for another upon the petition.

Under the holding of the majority opinion, the board is entirely without jurisdiction to take any action what-ever, and the applicant has no jurisdiction to publish notice of the application, if it can afterwards be shown that the signatures to the petition, or a sufficient number of them (in this case one), was placed upon the petition without authority. If the person who placed the name upon the petition acted in perfectly good faith, supposing he was duly authorized, and upon due publication of the notice no objection is made to the petition, the re-sult is the same, there was no jurisdiction and the whole proceedings are void. The consequences are remarkable. After the applicant has received his license and has con-ducted his business legally and properly, as he supposes, one of the petitioners raises the question whether his sig-

nature was duly authorized. The licensee is prosecuted, and his defense depends upon being able to show that the signature to the petition was authorized. If not, he has no license, and is guilty. The decision in *State v. Weber* and *Zielke v. State, supra,* if followed, would save us from such an absurdity.